**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
kevin@kjclawgroup.com
W. Blair Castle (SBN 354085)
blair@kjclawgroup.com
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN GAY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIFF, LLC, a California limited liability company,<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF (1) WASHINGTON's COMMERCIAL ELECTRONIC MAIL ACT & (2) WASHINGTON's CONSUMER PROTECTION ACT**<br><br>(***JURY TRIAL DEMANDED***) |

## NATURE OF ACTION

1. Plaintiff John Gay ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, due to the illegal actions of Defendant DIFF, LLC ("Defendant" or "DIFF") in knowingly and/or willingly engaging in the unlawful practice of advertising in false and deceptive commercial e-mails ("spams") in violation of (i) Washington's Commercial Electronic Mail Act, RCW 19.190, *et seq.*, and (ii) Washington's Consumer Protection Act, RCW 19.86, *et seq.*

2. More specifically, DIFF uses a variety of tricks and deceptive language to influence consumer behavior. For example, DIFF frequently uses the subject line to disguise the true commercial purpose of the email and trick the recipient into opening it, such as emails sent by DIFF on March 2, 2026, with the subject line: "ENDING TONIGHT 🚨 $39 Prescription Glasses" and purporting to represent that a certain sale—on prescription glasses—would end that day (e.g., on March 2, 2026), and consumers would miss out on the savings if they did not purchase by the end of the day. In reality, DIFF continued to offer the same sale later in the month. On March 23, 2026, DIFF sent another email, with the subject line "ENDING TONIGHT 😱 $39 Prescription Glasses." And on April 7, 2026, DIFF sent another email advertising the same sale, with the subject line: "$39 Prescription Frames ❤️ Tonight Only!"

3. In other words, the supposed discount was still available after the final time period suggested by DIFF expired, and so the "ENDING TONIGHT" subject line representations were false.

4. DIFF also used subject lines to mislead consumers into believing that promotions applied to "any item" on DIFF's storefront. For example, on May 10, 2026, DIFF send an email with the subject line "Snag 50% Off Any Item Now!" But the body of the email directly contradicts the claim that the 50% discount applied to "any" item, stating that the offer was not valid on a variety of items, including "accessories, lens upgrades, skin care, protection plans, select collaborations, charity items…, gift cards,

[and] iconica ….” (See screenshot below.)

From: **Olivia S from DIFF** <info@send.diffeyewear.com>
Date: Sun, May 10, 2026 at 6:49 PM
Subject: Snag 50% Off Any Item Now!
To: <johnwgay1948@gmail.com>




Click here to view the web version of this email.
No longer want to receive these emails? You can Unsubscribe.
DIFF Eyewear | 19701 Hamilton Avenue Suite 260 Torrance, CA 90502

*Coupon codes: Unless otherwise stated, coupon codes are not valid with other offers and do not stack with BOGO Free. Only one coupon code is allowed per order. Offer valid only on select styles, while supplies last. Coupon codes are not valid on accessories, lens upgrades, skin care, protection plans, select collaborations, charity items (including donations), gift cards, Iconica, prior purchases, taxes or shipping. Collaborations include but are not limited to Disney Princess, Star Wars, Harry Potter, Yellowstone, Jessie James Decker, Marvel and more.*

5. DIFF sent 42 emails with such false "any item" subject line misrepresentations since February 6, 2026 to Plaintiff alone.

6. In these and other instances, DIFF is in violation of the Washington Consumer Electronic Mail Act ("CEMA"). *See* RCW 19.190.020(1)(b). As the Washington Supreme Court recently stated, "CEMA distinctly outlaws sending commercial e-mails that contain

false or misleading information in subject lines." *Brown v. Old Navy, LLC*, 4 Wash. 3d. 580, 584 (Wash. 2025). And "[a] violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Id.* "Per se CPA violations are predicated on the Legislature's recognition that certain conduct is categorically against the public interest." *Id.* (quotation omitted).

7. Plaintiff brings this class action on behalf of himself and other persons residing in Washington who received DIFF's false and misleading emails. Plaintiff's requested relief includes an injunction to end these practices, an award to Plaintiff and class members of statutory damages for each illegal email, and an award of attorneys' fees and costs.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

9. The Central District of California has specific personal jurisdiction over Defendant because Defendant is at home and headquartered in this District. Defendant also has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California through its transmission—from Torrance, California—of illegal commercial electronic mail messages to consumers.

10. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## PARTIES

11. Plaintiff is now, and at all times relevant has been, an individual domiciled in Thurston County, Washington.

12. Defendant DIFF, LLC is a Delaware corporation with its principal place of business in Torrance, California.

## THE UNLAWFUL SPAM E-MAILS

**A. Under CEMA, it is a *per se* violation of the CPA to initiate (or conspire to initiate) the transmission of commercial emails with false or misleading information in the subject line to Washington residents.**

13. It is a violation of CEMA to "initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that . . . [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

14. As the Washington Supreme Court recently explained, "CEMA protects consumers by requiring that commercial e-mails communicate honestly about the terms of a given promotion or sale in the subject line." *Brown*, No. 102592-1, at *19.

**B. DIFF initiates (or conspires to initiate) the transmission of commercial emails with false or misleading information in the subject line to Washington residents.**

15. DIFF has initiated (or conspired to initiate) the transmission of commercial electronic mail messages with several types of false or misleading subject lines to Plaintiff and members of the class.

16. DIFF's false or misleading subject lines fall into at least two categories: (a) subject lines that describe a specific, limited-time promotion that is not, in fact, limited to the timeframe described in the subject line; and (b) subject lines that state without qualification that a promotion applies to "any item" when that is not the case.

17. In each case, the subject line conveys an objective statement of fact that is provably false or misleading.

18. As explained above, on March 2 and March 23, 2026, DIFF sent emails to Plaintiff with the subject line: "ENDING TONIGHT … $39 Prescription Glasses" and purporting to represent that a certain sale—to redeem a coupon to purchase items on sale—on prescription glasses—would end that day (e.g., on March 2 and March 23, 2026, respectively), and consumers would miss out on the savings if they did not purchase by the

end of the day. In reality, DIFF continued to offer the promotion just two weeks later, as reflected by the April 7, 2026 email with the subject line "$39 Prescription Frames ❤️ Tonight Only!" Discovery will show additional emails and potentially other categories of false or misleading subject lines.

19. The emails at issue are electronic mail messages, in that they were each an electronic message sent to an electronic mail address. The emails from DIFF also referred to an internet domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

20. The emails at issue are commercial in nature in that the purpose of the emails is to promote goods for sale by DIFF and induce consumers into making purchases from DIFF.

21. The emails were sent at DIFF's direction and were approved by DIFF.

***i. DIFF falsely represents that promotions are limited to a specific timeframe.***

22. DIFF misrepresents the length of time sales will be offered by sending one or more emails whose subject lines state or imply that a promotion expires that day, or within a short specified window, when that is not the case.

23. For example, on March 2 and March 23, 2026, DIFF sent emails to Plaintiff with the subject line: "ENDING TONIGHT … $39 Prescription Glasses" and purporting to represent that a certain sale—to redeem a coupon to purchase items on sale —on prescription glasses—would end that day (e.g., on March 2 and March 23, 2026, respectively), and consumers would miss out on the savings if they did not purchase by the end of the day. In reality, DIFF continued to offer the promotion just two weeks later, as reflected by the April 7, 2026 email with the subject line "$39 Prescription Frames ❤️ Tonight Only!" Discovery will show additional emails and potentially other categories of false or misleading subject lines.

24. The March 2 and March 23 email subject lines therefore falsely conveyed a same-day deadline and created artificial urgency, when in reality, the customer could take advantage of the same promotional offer just two-to-three weeks later.

25. Similarly, on May 13, 2026, DIFF sent an email with the subject line "Tonight Only: Snag 50% Off Any Item!" Just three days later, on May 16, 2026, DIFF sent another email with the subject line "Snag 50% Off Any Item Now!"

26. This marketing tactic involves a fundamental misrepresentation of fact regarding the duration of the promotion. Federal Trade Commission ("FTC") regulations prohibit this practice, stating that sellers may not "make a 'limited' offer which, in fact, is not limited." 16 C.F.R. § 233.5. On information and belief, DIFF determines in advance how long it will offer a given promotion, such that it knows when it represents the limited duration of the promotion that the description is untruthful. In other words, on information and belief, DIFF always planned for the sale to last more than one day, such that the subject line was false and misleading.

27. The clear purpose of this tactic is to grab the consumer's attention and induce immediate action to secure savings that will not be available beyond a specific window of time. Research indicates that limited-time discounts create a sense of urgency that changes consumer decision making, including by persuading customers to purchase items sooner than they otherwise would, purchase more or different items than they otherwise would, or forego comparison shopping. DIFF designs the subject lines of its marketing emails to tap into these consumer urges.

28. The chart below shows examples of email subject lines transmitted by DIFF that state or imply a false or misleading limited-time promotion:

| Date | Subject Line |
| --- | --- |
| 2/12/2026 | Last Chance! 50% Off Any Item! |
| 2/15/2026 | 2 Days Left ☀️ 50% Off Sitewide |
| 2/16/2026 | LAST DAY 😱 50% Off Sitewide |
| 2/21/2026 | TONIGHT: 50% OFF ANY Item |
| 2/25/2026 | Final Call: 50% Off Any Item! |

| | |
|---|---|
| 3/2/2026 | ENDING TONIGHT 🚨 $39 Prescription Glasses |
| 3/15/2026 | Last Call: 50% Off ANY Item! |
| 3/23/2026 | ENDING TONIGHT 😱 $39 Prescription Glasses |
| 4/17/2026 | Tonight Only: Grab 50% Off Any Item! 🎉 |
| 5/13/2026 | Tonight Only: Snag 50% off Any Item! 🎉 |

29. DIFF uses its time-limited sales to send more emails to consumers than it otherwise might. The company often sends multiple promotional emails every day, many of them advertising the "limited-time" offers.

***ii. DIFF states without qualification that promotions apply to "any item."***

30. DIFF frequently uses subject lines that mislead consumers into believing a sale or discount applies to "any item." Such subject liens tell consumers that the promotion applies to any product available on DIFF's site. In reality, the promotions are not sitewide and do not apply to "any item."

31. Other retailers accurately advertise sitewide sales that do not have product exclusions. Others state in the subject line that exclusions apply. DIFF instead chooses to grab the consumer's attention using deceptive subject lines that suggest a sale has broader application than it truly does. There often is nothing in DIFF's subject lines that communicates that the advertised promotion is limited to select products, limited specific categories, or other restrictions.

32. For example, on May 10, 2026, DIFF send an email with the subject line "Snag 50% Off Any Item Now!" There was no asterisk or other indication in the subject line that "Any Item" should not be taken at face value.

33. The fine print in the body of DIFF's emails state, among other restrictions, that the 50% discount was not valid on a variety of items, including "accessories, lens upgrades, skin care, protection plans, select collaborations, charity items…, gift cards, [and] iconica …."

34. Accordingly, the advertised "any item" sales were not sitewide and did not apply to "any item." They applied only to limited subsets of merchandise, under limited conditions, and subject to numerous exclusions and restrictions that were not disclosed in the subject lines.

35. The chart below shows examples of subject lines from emails transmitted by DIFF following this pattern:

| Date | Subject Line |
|---|---|
| 2/7/2026 | TONIGHT! 50% Off ANY Item! |
| 2/8/2026 | ¡Vamos! 50% Off Any Item Tonight |
| 2/12/2026 | Last Chance! 50% Off Any Item! 🕘 |
| 2/21/2026 | TONIGHT: 50% OFF ANY Item |
| 2/25/2026 | Final Call: 50% Off Any Item! |
| 2/28/2026 | TONIGHT: 50% Off ANY Item! |
| 3/7/2026 | TONIGHT: 50% Off ANY Item! |
| 3/8/2026 | TONIGHT: 50% Off ANY Item! |
| 3/11/2026 | TONIGHT: 50% Off ANY Item! |
| 3/13/2026 | TONIGHT: 50% Off ANY Item! |
| 3/14/2026 | 50% Off ANY Item Is Back! |
| 3/15/2026 | Last Call: 50% Off ANY Item! |
| 3/20/2026 | 50% Off ANY Item Is Back! |

**C. DIFF sends commercial emails to consumers whom it knows or should know reside in Washington.**

36. DIFF sent the misleading commercial emails to email addresses that DIFF knew or should have known were held by Washington residents, either because (i) DIFF had a physical Washington address that was associated with the recipient; (ii) DIFF had

access to data regarding the recipient indicating that they were in Washington state; or (iii) information was available to DIFF upon request from the registrant of the internet domain name contained in the recipient's electronic mail address. Moreover, DIFF does business nationwide and knows that at least some of its customers reside in Washington.

37. On information and belief, DIFF knows where many of its customers and email recipients reside through several methods.

38. For example, for any person that places an order online from DIFF, DIFF associates an email address with a shipping address and/or billing address for that order.

39. DIFF also encourages online shoppers to create online accounts. Customers save information in their DIFF accounts along with their email address, such as their shipping addresses and phone numbers.

40. Plaintiff expects that discovery will show that DIFF employs methods to both track the effectiveness of its marketing emails and identify consumers that click on links contained in DIFF's marketing emails, including by identifying their physical location. For example, Plaintiff expects that discovery will also show that DIFF gathers information such as geocoordinates and IP addresses from individuals who click on links in DIFF's commercial emails, and that DIFF can use such information to determine whether the recipient is in Washington.

41. DIFF also knew, should have known, or had reason to know that it sends marketing emails to Washington residents due to its large presence in the state and the volume of marketing emails it sends to people around the country.

**D. DIFF initiated (or conspired to initiate) the transmission of illegal emails to Plaintiff.**

42. At all times relevant to this Complaint, Plaintiff resided in Washington State.

43. Plaintiff has received DIFF's emails since at least February 6, 2026.

44. DIFF knows, should know, or has reason to know, that Plaintiff Gay's email address is held by a Washington resident. After all, Plaintiff Gay signed up to receive emails from DIFF. Plaintiff Gay also has clicked on links contained in DIFF's emails from

his computer, which was registered to an IP address in Washington at all relevant times, or from his smart phone.

45. Plaintiff Gay received emails identified above that were sent after February 6, 2026, which he alleges to be false and misleading. These emails show that DIFF engaged in this conduct throughout the relevant period.

46. Plaintiff Gay does not want to receive emails with false and misleading subject lines from DIFF, though he would like to continue receiving truthful information from DIFF regarding its products (and actual "sales"). However, due to DIFF's conduct, Plaintiff Gay cannot tell which emails from DIFF contain truthful information or which emails are spam with false and misleading information designed to spur him to make a purchase.

47. Plaintiff continues to receive emails with false and misleading subject lines. DIFF is aware of all the emails it has sent to Plaintiff, and discovery will show the full number of illegal spam emails DIFF has sent throughout the relevant period.

## **CLASS ACTION ALLEGATIONS**

48. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following classes of persons or entities similarly situated throughout the United States.

49. Plaintiff brings this action for statutory liquidated damages on behalf of himself and all persons similarly situated and seeks certification of the following class:

> All Washington residents who, within four years before the date of the filing of this Complaint until the date of trial, received an email from or at the behest of DIFF that contained a subject line that (a) states or implies that a particular promotion will be available for a specified period of time when the actual period for the sale is longer; or (b) states without qualification that a promotion applies to "any item" when that is not the case.

50. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or

employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

51. **Numerosity**. The potential Class members as defined are so numerous and so diversely located throughout Washington, that joinder of all the Class members is impracticable. Class members are dispersed throughout Washington. Joinder of all members of the proposed Class is therefore not practicable. Although Plaintiff does not know the precise number of Class members, due to the nature of the trade and commerce involved, Plaintiff believes that the total number of the members of the Class is in the thousands (e.g., on information and belief, Defendant sends similar spams to thousands of individuals throughout Washington).

52. **Ascertainability**. Upon information and belief, Defendant and/or Defendant's agents and affiliates, maintain records of the e-mails they send and the Internet traffic derived from the e-mail advertising at issue. Moreover, members of the Class who received e-mails with the alleged advertisements may be self-identified through their own e-mail records. As a result, the members of the Class are ascertainable through Defendant's records and/or the records of Defendant's agents and affiliates, as well as through public notice. This matter should therefore be certified as a Class Action to assist in the expeditious litigation of this matter.

53. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct because they all received unlawful spam e-mails that contain subject lines likely to mislead a recipient.

54. **Adequacy of Representation**. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and

Plaintiff and his counsel intend to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Class.

55. **<u>Existence and Predominance of Common Questions of Law or Fact</u>**. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a) Whether the subject lines of the specified emails were false and misleading.

b) Whether all individuals on DIFF's email list received the emails.

c) Whether DIFF initiated the transmission or conspired to initiate the transmission of commercial electronic mail messages to recipients residing in Washington State in violation of RCW 19.190.020.

d) Whether Plaintiff and the proposed Class are entitled to an injunction enjoining DIFF from sending the unlawful emails in the future.

e) The nature and extent of classwide injury and damages.

56. **<u>Superiority</u>**. A Class Action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Plaintiff and the Class members have suffered or may suffer loss in the future by reason of Defendant's illegal practices. Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Certifying this case as a class action is superior because it allows for efficient relief to Class members.

57. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class.

Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

58. Defendant has acted or refused to act on grounds that are generally applicable to the Class so that relief is appropriate to the Class as a whole, making class certification appropriate pursuant.

///

**FIRST CAUSE OF ACTION**

**Violations of Washington's Commercial Electronic Mail Act, RCW 19.190, *et seq.***

**On Behalf of Plaintiff and the Proposed Class (Against All Defendants)**

59. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

60. Washington's CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or conspiring to initiate the transmission of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows or "consciously avoids knowing" is held by a Washington resident that contains false or misleading information in the subject line.

61. Defendant is a "person" within the meaning of the CEMA, RCW 19.190.010(11).

62. Defendant initiated the transmission or conspired to initiate the transmission of one or more commercial electronic mail messages to Plaintiff and proposed Class members with false or misleading information in the subject line.

63. Defendant's acts and omissions violated RCW 19.190.020(1)(b).

64. Defendant's acts and omissions injured Plaintiff and proposed Class members.

65. The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff, the members of the Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is, based on information and belief, ongoing as of the date of the filing of this Complaint. And absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

66. Plaintiff and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.020(1)(b).

///

## SECOND CAUSE OF ACTION

**_Per Se_ Violations of Washington's Consumer Protection Act, RCW 19.86, _et seq._**

**On Behalf of Plaintiff and the Proposed Class (Against All Defendants)**

67. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

68. Plaintiff and Class members are "persons" within the meaning of the CPA, RCW 19.86.010(1).

69. Defendant violated the CEMA by initiating or conspiring to initiate the transmission of commercial electronic mail messages to Plaintiff and Class members that contain false or misleading information in the subject line.

70. A violation of CEMA is a per se violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq. See* RCW 19.190.030.

71. A violation of CEMA establishes all five elements of a CPA claim as a matter of law.

72. Defendant's violations of CEMA are unfair or deceptive acts or practices that occur in trade or commerce under the CPA. RCW 19.190.100.

73. Defendant's unfair or deceptive acts or practices affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.100.

74. Pursuant to RCW 19.190.040(1), damages to each recipient of a commercial electronic mail message sent in violation of the CEMA are the greater of $500 for each such message or actual damages, which establishes the injury and causation elements of a CPA claim as a matter of law.

75. As a result of Defendant's acts and omissions, Plaintiff and Class members are entitled to $500 in statutory damages for each and every email that violates the CEMA.

76. Defendant engaged in a pattern and practice of violating the CEMA.

77. Plaintiff and Class members are entitled to recover reasonable attorneys' fees and costs, pursuant to RCW 19.86.090.

78. Plaintiff and members of the Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the CPA in the future.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the members of the Class, seeks judgment against Defendant and requests that the Court:

A. Certify the asserted claims, or the issues raised, as a class action;

B. Appoint Plaintiff as Class Representative;

C. Appoint the undersigned counsel as counsel for the Class;

D. Enter declaratory, equitable, and/or injunctive relief as permitted by law to ensure Defendant does not continue to engage in the unlawful conduct described in this Complaint, and an accompanying order that the Court retain jurisdiction for a period of at least six months to ensure that Defendant complies with those measures;

E. Enter an order to ensure that Defendant is restrained from altering, deleting, or destroying any documents or records that could be used to identify members of the Class;

F. Award statutory damages where applicable;

G. Award pre- and post-judgment interest;

H. Award reasonable attorneys' fees and costs, as allowed by law, including but not limited to RCW 19.86.090; and

I. Award any other relief the Court deems just or reasonable under the circumstances.

DATED: June 2, 2026

Respectfully submitted,

**KJC LAW GROUP, A.P.C.**

By: */s/ Kevin J. Cole*
Kevin J. Cole

*Attorneys for Plaintiff and the Proposed Class*